```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
FAUSTINO ARIAS

          Petitioner,                    MEMORANDUM AND ORDER

     -against-                           Civil Action No.
                                         CV-03-4098(DGT)
JOHN DONILLI, Superintendent,
Bare Hill Correctional Facility

          Respondent.

------------------------------X
```

Trager, J:

In this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, pro se petitioner Faustino Arias seeks relief from the concurrent sentences imposed on him as a consequence of his conviction in New York State Supreme Court, Kings County, for Criminal Sale of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Seventh Degree. For the reasons that follow, the petition is denied.

**Background**

On November 15, 2000, at approximately 6:10 p.m., Detective Arnaldo Almonte approached petitioner during an undercover buy-and-bust operation at Flatbush and Woodruff Avenues in Brooklyn and asked him if he knew anyone who sold crack cocaine. Petitioner took the detective to his place of employment at 771

Flatbush Avenue and led him into a back room. There, petitioner smoked some crack cocaine before pulling out a knife and asking the detective whether he was a cop. Detective Almonte told petitioner that he was not a cop, and at petitioner's direction raised his shirt to show that he was unarmed. Petitioner thereafter gave Detective Almonte a ziplock bag containing a small quantity of crack cocaine in exchange for twenty-five dollars in pre-recorded bills.

At the conclusion of this transaction, Detective Almonte notified his back-up team that a narcotics buy had occurred. The team moved in, arrested petitioner, and recovered from his person the twenty-five dollars in pre-recorded bills as well as a rock of crack cocaine.

Petitioner was charged with Criminal Sale of a Controlled Substance in the Third Degree (New York Penal Law § 220.39(1)), Criminal Possession of a Controlled Substance in the Seventh Degree (New York Penal Law § 220.03), Menacing in the Second Degree (New York Penal Law § 120.14(1)), Criminal Possession of a Weapon in the Fourth Degree (New York Penal Law § 265.01(2)), and related charges.

**(1)**

The first four witnesses presented by the prosecution were the Brooklyn South Narcotics Division detectives who arranged the buy-and-bust operation. According to them, the November 15, 2000 operation began at approximately 4:35 p.m. Detective Almonte was assigned as the primary undercover officer, Detective Agapito Soler as the secondary undercover officer, Detective Edward Wiatrak as the arresting officer, and Sergeant Vincent Currulli as the operation supervisor. Tr. at 24-25, 114-16, 163-64, 211-12.

After arriving in the vicinity of Ocean and Parkside Avenues in two unmarked cars, the detectives began their operation by checking their equipment for functionality. Detective Almonte was wearing wires on his upper arm, which allowed him to transmit and receive messages at the press of a button. Detective Soler, whose task was to "ghost" Detective Almonte on the street, carried a concealed portable radio. Sergeant Currulli and Detective Wiatrak remained in their car and monitored the others' transmissions via radio. Tr. at 25-27, 117-18, 166-67, 214-15.

For approximately ninety minutes, Detective Almonte walked up and down Flatbush Avenue attempting to purchase narcotics. He unsuccessfully approached five or six individuals before encountering petitioner around 6:10 p.m. Tr. at 29. Detective

Almonte asked petitioner if he knew who sold "rocks." According to the detective's testimony, petitioner immediately told him to "hush." Tr. at 31-32. Petitioner then told Detective Almonte to follow him across the street to a store where he worked. Upon their arrival at the store, petitioner escorted the detective into a small backroom. Tr. at 32-33.

Detective Soler, meanwhile, had been observing everything that transpired. After seeing Detective Almonte follow petitioner into the store, Detective Soler transmitted the store's location and petitioner's description back to Detective Wiatrak and Sergeant Currulli. Detective Soler then walked over to the store and stood outside. Tr. at 115-21.

By this time, Detective Almonte and petitioner were alone in the store's backroom. Petitioner asked Detective Almonte what he was looking for, and the detective replied that he wanted "a dime." After petitioner stated that he only had a twenty dollar bag, Detective Almonte handed him a pre-recorded twenty dollar bill. Petitioner took the money and then removed a glass pipe and a ziplock bag containing a white powdery substance from his pockets. He placed some the substance in the pipe and proceeded to "smoke up." Tr. at 34. Suddenly, petitioner pulled out a knife and said to the detective "[i]f you are a cop, I will kill you and I don't really give a fuck." Tr. at 35. Detective

4

Almonte told petitioner he was not a cop, and at petitioner's direction opened his jacket and raised his shirt. Petitioner then demanded that Detective Almonte give him five more dollars. The detective handed petitioner five additional dollars in pre-recoded bills, and petitioner in return gave him the ziplock bag containing the remainder of the white powdery substance. Petitioner subsequently put the knife away and opened the door for Detective Almonte to leave. Tr. at 36-38.

The other three detectives had been listening intently to their radios while these events were taking place. Tr. at 121, 168, 216. Most the exchange between petitioner and Detective Almonte was conducted in Spanish, however, and only Detective Soler was able to fully understand what was being said. Tr. at 122. Detective Soler transmitted to Sergeant Currulli and Detective Wiatrak a translation of those parts of the conversation not in English, which happened to include petitioner's threats. Once he became aware of the threats, Sergeant Currulli ordered the team to move in. Tr. at 126, 218.

As the back-up team mobilized, Detective Almonte emerged from the store and told Detective Soler that there had been a "buy" and that petitioner was carrying a knife. Tr. at 38-39, 126. Seconds later, petitioner exited the store onto the street. Detective Soler displayed his shield, yelled "police," and

5

grabbed petitioner from behind.  Petitioner broke away and pulled out the knife.  Drawing his gun, Detective Soler ordered petitioner to "drop it."  Tr. at 39-40.  Petitioner submitted, and Detective Wiatrak, who had just arrived on the scene, immediately handcuffed him.  Detective Wiatrak then executed a search of petitioner's person.  The search yielded both the twenty-five dollars in pre-recorded money and a rock of crack cocaine.  Tr. at 171-73.

Elizabeth Mansuer, a chemist employed by the New York City Police Department, testified that she tested the contents of the ziplock bag sold to Detective Almonte as well as the substance recovered from petitioner.  She stated that both substances tested positive for cocaine.  Tr. at 203-05.

(2)

Petitioner took the stand on his own behalf.  According to petitioner, he was walking to work when Detective Almonte approached him.  Tr. at 247.  Petitioner claimed that the two had seen each other before, but that he did not know the detective was a police officer.  Petitioner stated that he would not have guessed that Detective Almonte was a police officer since he had sold the detective marijuana the year before without any adverse consequences.  Tr. at 259-60.  Nevertheless, petitioner testified

6

that on the night in question he denied Detective Almonte's initial request for drugs because he was only a "user" and not a "dealer." Tr. at 247-48.

Petitioner stated that Detective Almonte followed him as he continued on his way to work, all the while asking repeatedly for drugs. When they finally reached the store, petitioner told the detective that he did not have much but that he would give what he could. Tr. at 249. Petitioner stated that the two of them entered the store and went to the back room. There, the detective said he needed "a little bit" because he was going out later with his girlfriend. Tr. at 253-54. Petitioner cut his small rock of crack cocaine into halves and gave one to the detective. Tr. at 250. He testified that the detective then voluntarily handed him twenty dollars even though he had never asked the detective for any money and had viewed the drugs as a gift. Petitioner said that he asked the detective for an additional five dollars so that he could buy beer and soda. Tr. at 250-51.

Petitioner admitted to possessing a knife, but testified that he never took it out during his encounter with Detective Almonte. He explained that the knife was for cutting up boxes, which was part of his job at the store. Petitioner stated that he started cutting boxes immediately after the detective left.

7

When he stepped outside the store to dispose of some of the boxes he just cut, petitioner testified that someone yelled "police" and that he dropped the knife instantaneously in response. Tr. at 254-55.

(3)

Prior to summations, defense counsel requested that the court instruct the jury on entrapment. The court denied the request. Tr. at 264-65. On September 26, 2001, petitioner was convicted of Criminal Sale of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Seventh Degree. On October 15, 2001, he was sentenced to six to eighteen years for the criminal sale conviction and to a concurrent term of one year for the criminal possession conviction.

On direct appeal, petitioner argued that the trial court erred in refusing to charge the jury on entrapment and that the sentence imposed on him was excessive. On March 17, 2003, the Appellate Division affirmed petitioner's conviction, finding that no reasonable view of the evidence supported an entrapment defense and that the sentence imposed was not excessive. People v. Arias, 303 A.D.2d 592, 756 N.Y.S.2d 487 (2d Dep't 2003). On July 7, 2003, the New York State Court of Appeals denied

petitioner's application for leave to appeal.  People v. Arias, 100 N.Y.2d 578, 764 N.Y.S.2d 388 (2003).

## Discussion

Petitioner filed this petition for a writ of habeas corpus on August 18, 2003, raising the two claims presented to the state courts.  On November 29, 2004, petitioner was paroled to the custody of the United States Citizenship and Immigration Services.  Shortly thereafter, petitioner was removed from the United States to the Dominican Republic.

### (1)

### Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 114, establishes a deferential standard of review for habeas corpus petitions. Under AEDPA, a federal court may grant habeas relief with respect to a federal claim adjudicated on the merits in state court only if that adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C.

9

§ 2254(d). Determination of factual issues made by a state court "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to" Supreme Court precedent if the court "applies a rule that contradicts the governing law," or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. The Supreme Court has emphasized that the reasonableness of the state court's application of the law is to be assessed objectively rather than subjectively. See id. at 409-10. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

**(2)**

**Mootness**

Petitioner was incarcerated at Arthurkill Correctional Facility in Staten Island when he filed his petition, so he meets the "in custody" requirement of 28 U.S.C. § 2254 even though he has since been deported to the Dominican Republic. See Spencer v. Kemna, 523 U.S. 1, 7 (1998). Nevertheless, federal courts may exercise jurisdiction only over actions that present a live case or controversy. Id. Petitioner's deportation moots his petition if there is no "possibility that any collateral legal consequences will be imposed [on him] on the basis of the challenged conviction[s]." Sibron v. New York, 392 U.S. 40, 47 (1968).

Petitioner's challenged convictions, viewed in isolation, could impose collateral legal consequences since convicted drug offenders who are deported are permanently barred from re-entering the United States. See 8 U.S.C. § 1182(a)(2)(A)(i)(II). That effect would constitute a collateral legal consequence sufficient to preclude mootness. Perez v. Greiner, 296 F.3d 123, 126 (2d Cir. 2002). Petitioner, however, was previously convicted on two occasions of narcotics offenses in New York. Specifically, in 2000, petitioner was convicted of Criminal Sale of Marijuana in the Fourth Degree and Criminal Possession of a

Controlled Substance in the Seventh Degree. These convictions rendered petitioner deportable and bar him from re-entering the United States. See 8 U.S.C. §§ 1182(a)(2)(A)(i)(II), 1227(a)(2)(B)(i). In short, even if petitioner's challenged convictions were set aside, he would remain barred from re-entry based on his prior convictions. Consequently, there is no possibility that petitioner will suffer any collateral legal consequences on the basis of the challenged convictions. Perez, 296 F.3d at 126. The petition is therefore moot.

Notwithstanding the petition being moot, petitioner's claims are without merit.

**(3)**

**Entrapment Charge**

Although error in a state court's instructions to the jury on entrapment is a matter of state law, petitioner may be entitled to habeas relief on this ground if he can show both that he was entitled to an entrapment charge and that the failure to give him one constituted a denial of due process. See Jackson v. Edwards, 404 F.3d 612, 621 (2d Cir. 2005); Davis v. Strack, 270 F.3d 111, 124 (2d Cir. 2001).

Entrapment in New York is an affirmative defense, meaning that petitioner bore the burden of establishing entrapment by a

preponderance of the evidence. New York Penal Law §§ 25.00(2), 40.05. The defense requires a showing "both that the proscribed conduct was 'induced or encouraged' by official activity and that the defendant had no predisposition to engage in such conduct." People v. Butts, 72 N.Y.2d 746, 750-51 (1988). While petitioner's testimony, in diverging from Detective Almonte's version of the events, may have created an issue of fact for the jury with respect to the first branch of the required showing, he failed to present any evidence to show his lack of a predisposition to commit the crimes charged. Rather, if anything, petitioner's admission that he previously sold narcotics demonstrated a predisposition on his part to commit the crimes. See People v. Carrillo, 191 A.D.2d 812, 814, 594 N.Y.S.2d 902 (3d Dep't 1993) (defendant's admission of prior cocaine sales to confidential informant and others "alone negates a lack of predisposition to commit the offense"). Since the state court correctly found under New York law that the evidence established did not warrant a charge on entrapment, habeas relief on this ground is denied.

**(4)**

**Excessive Sentence**

Petitioner was sentenced to six to eighteen years imprisonment upon his conviction for Criminal Sale of a Controlled Substance in the Third Degree. As a Class B felony, this crime was punishable by anywhere from three to twenty-five years imprisonment. New York Penal Law § 70.00(2)(b). Since petitioner's sentence "is within the range prescribed by state law," federal <u>habeas</u> relief is not available on this ground. <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992).

**Conclusion**

For the foregoing reasons, Arias's habeas corpus petition is denied. Further, a certificate of appealability shall not issue because petitioner has not demonstrated a substantial showing of a constitutional violation. See 28 U.S.C. § 2253(c)(2). The Clerk of the Court is directed to enter judgment accordingly and close the case.


Dated: Brooklyn, New York
       February 6, 2007

                                        SO ORDERED:


                                          /s/
                                        David G. Trager
                                        United States District Judge